## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZACHARY THOMAS SPADA,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-00478** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **ULRICH H. KLEMM, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendants' motion to partially dismiss the amended complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 27.)  Also pending before the Court are Plaintiff's motions for a preliminary injunction and leave to file a supplemental complaint.  (Doc. Nos. 26, 34.)  For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion to partially dismiss the amended complaint, and the Court will deem Plaintiff's motions withdrawn.

## I.     BACKGROUND

### A.     Procedural Background

Plaintiff Zachary Thomas Spada ("Plaintiff"), who is a convicted and sentenced state prisoner within the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Houtzdale in Houtzdale, Pennsylvania ("SCI Houtzdale").  (Doc. No. 1.)  He commenced this civil action by filing an original complaint on March 30, 2022,

pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983") and the Religious

Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1

et seq. (Id.)  He seeks redress for violations of the First and Fourteenth Amendments

to the United States Constitution, as well as RLUIPA, which allegedly occurred

when he was denied his requests for a Kosher diet while incarcerated at SCI

Houtzdale.  (Id.)

Named as Defendants in Plaintiff's original complaint are the following

individuals, all of whom work for the DOC: Ulrich H. Klemm ("Klemm"), the

DOC's Religious Services Administrator; Abdulrahman K. Abumarad

("Abumarad"),[1] the Chaplaincy Program Director at SCI Houtzdale; Matthew J. Pyo

("Pyo"), the Classification Program Manager at SCI Houtzdale; Barry R. Smith

("Smith"), the Superintendent at SCI Houtzdale; and Keri L. Moore ("Moore"), an

Administrative Officer Three (3) for the DOC (collectively, "Defendants").  (Id. at

1-3.)

In his original complaint, Plaintiff claimed, essentially, that when he was

denied his requests for a Kosher diet at SCI Houtzdale, he was unable to exercise his

---

[1]  The spelling of Defendant Abumarad's name has changed from the original
complaint to the amended complaint.  Compare (Doc. No. 1 at 1, 3) with (Doc. No.
24 at 1, 2).  The Court uses the spelling of Defendant Abumarad's name as set forth
in the amended complaint.  The Clerk of Court will be directed to update the spelling
of Defendant Abumarad's name on the docket of this case.

religion because he was being forced to eat food that his religion prohibits.[2]  (Id. at 4-6.)  As for relief, Plaintiff sought monetary damages, as well as preliminary and permanent injunctive relief.  (Id. at 6.)

In addition to filing his original complaint, Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. No. 5) and his prisoner trust fund account statement (Doc. No. 6).  On April 5, 2022, the Court granted Plaintiff's motion for leave to proceed in forma pauperis, deemed his original complaint filed, and directed service of the original complaint on the named Defendants.  (Doc. No. 7.)

On May 5, 2022, Defendants filed their collective waiver of service. (Doc. No. 12.)  On that same day, Plaintiff filed a motion seeking a preliminary injunction and a brief in support thereof.  (Doc. Nos. 13, 14.)  On May 19, 2022, Defendants filed a brief in opposition to Plaintiff's motion (Doc. No. 16) and, on June 6, 2022, Defendants filed a motion to partially dismiss Plaintiff's original complaint, followed by a brief in support thereof.  (Doc. Nos. 21, 23.)  In response to Defendants' motion to dismiss, Plaintiff filed an amended complaint. (Doc. No. 24.)

---

[2] Even though the events giving rise to Plaintiff's claims allegedly occurred at SCI Houtzdale, a state correctional institution located in the Western District of Pennsylvania, and even though some of the Defendants that Plaintiff has sued are also located within the Western District of Pennsylvania, two (2) of the Defendants are located within the Middle District of Pennsylvania (i.e., Defendants Klemm and Moore), and all Defendants are located within the state of Pennsylvania.  See 28 U.S.C. § 1391(b) (explaining that, for venue purposes, a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located").

Much like his original complaint, Plaintiff's amended complaint seeks redress for violations of the First and Fourteenth Amendments to the United States Constitution, as well as RLUIPA, which allegedly occurred when he was denied his requests for a Kosher diet at SCI Houtzdale.  (Id. ¶¶ 30-32.)

Shortly thereafter, the Court issued an Order that deemed Plaintiff's amended complaint the operative complaint in this matter, dismissed as moot both Plaintiff's motion seeking a preliminary injunction and Defendants' motion to partially dismiss the original complaint, and directed Defendants to file an answer or other response to the amended complaint within twenty-one (21) days.  (Doc. No. 25.)

On July 28, 2022, Plaintiff filed a second motion for a preliminary injunction. (Doc. No. 26.)  Plaintiff did not file a brief in support of that motion.  On August 10, 2022, Defendants filed a motion to partially dismiss Plaintiff's amended complaint and a brief in support thereof pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. Nos. 27, 28.)  On September 9, 2022, Plaintiff filed a brief in opposition to Defendants' motion to dismiss.  (Doc. No. 29.)  Then, on December 19, 2022, Plaintiff filed a motion for leave to file a "supplemental complaint." (Doc. No. 34.)  Plaintiff did not file a brief in support of that motion.

Thus, the parties' pending motions are ripe for the Court's resolution.  As a result, the Court now turns to the allegations in Plaintiff's amended complaint.

**B.     Factual Background**

In his amended complaint, Plaintiff asserts that his "religious beliefs are sincerely held." (Doc. No. 24 at 4.)  In support of this assertion, he alleges that "[h]e was baptized as a Catholic in 2000 and converted to a Protestant Faith in 2009-2010." (Id. ¶ 21.)  He alleges that "[h]e has read the Bible and recognizes that he must eat a Kosher diet in accordance with the books of Leviticus and Dueteronomy." (Id.)  In particular, "[h]e believes that Jesus never abolished the dietary law" and that "Paul commanded the New Testament Church to follow dietary laws in the book of Acts of the Apostles Chapter 15." (Id.)

Plaintiff alleges that, in connection with his sincerely held religious beliefs, he submitted a request for a Kosher diet on January 15, 2021, while incarcerated at SCI Houtzdale. (Id. ¶ 11 (stating that the "failure to eat a Kosher diet violate[s] God's law").)  Plaintiff alleges that he subsequently met with Defendant Abumurad in November of 2021 to discuss his request for a Kosher Diet. (Id. ¶ 12.)  Plaintiff alleges that on December 7, 2021, Defendant Klemm denied his request for a Kosher diet, stating that Plaintiff's commissary purchases were inconsistent with foods that Plaintiff claimed his religion prohibits him from eating. (Id. ¶ 13 (citing Doc. No. 1-2).)

Plaintiff, however, adamantly disputes this. (Id. ¶ 23 (alleging that he "is unable to purchase Kosher items because the [commissary] price list is mislabled[,]

and [h]e does not know if an item is Kosher until he orders and receives it"); id. ¶ 24 (alleging that he is "only prohibit[ed] from **consuming** non-kosher food[,]" not that he is prohibited from "purchasing them and donating them, especially if he is unaware they are not Kosher until he receives them" (emphasis in original)).)

As a result, Plaintiff alleges that, on December 13, 2021, he filed a grievance disputing the denial of his request for a Kosher diet (id. ¶ 15) and that, on December 21, 2021, Defendant Pyo "issued an initial review response" (id. ¶ 16). Plaintiff alleges that he subsequently appealed to Defendant Smith (id. ¶ 17) and that, on December 23, 2021, Defendant Smith "issued a boilerplate appeal response" (id. ¶ 18). Plaintiff further alleges that he subsequently appealed to final review (id. ¶ 19) and that, on February 10, 2022, Defendant Moore answered his final review appeal "with a barebones reiteration" of the responses from Defendants Smith and Pyo (id. ¶ 20). Although Plaintiff does not specifically allege that his grievance and subsequent appeals were denied, he cites to, inter alia, the underlying denials, which he has attached to his original complaint and incorporated by reference in his amended complaint. See (Doc. No. 24 ¶¶ 10-20; Doc. Nos. 1-2, 1-3, 1-6 through 1-11).

In addition, Plaintiff alleges that, "[p]er DC-ADM 819, an inmate is allowed to reapply for a Kosher diet [six] 6 months after a denial." (Id. ¶ 26.) As a result, Plaintiff alleges that, on June 7, 2022, he reapplied for a Kosher diet. (Id.) Plaintiff

alleges that he met with Defendant Abumurad on July 1, 2022, to discuss his request. (Id. ¶ 27.)  Plaintiff alleges that, during this meeting, Defendant Abumurad informed Plaintiff that he recently had a meeting with Defendant Klemm and that they were aware that "the commissary price list is mislabeled."  (Id.)  Plaintiff alleges, however, that Defendant Klemm "absolved himself of responsibility to fix the list" and placed the blame on the DOC "to republish the list."  (Id.)  Plaintiff further alleges that Defendant Klemm had stated that the DOC will continue to use "the mislabeled list" to deny Kosher diets and that the DOC "'does not believe or care' that inmates such as [Plaintiff] may order items by mistake and then dispose of them upon learning of that mistake."  (Id.)[3]

In connection with all of these allegations, Plaintiff has sued Defendants in both their individual and official capacities, claiming that they have violated his rights under the First and Fourteenth Amendments to the United States Constitution, as well as RLUIPA.  (Doc. No. 24 ¶¶ 9, 30-32.)  As for relief, Plaintiff seeks a declaratory judgment, an injunction, compensatory damages, punitive damages, and nominal damages.  (Id. at 6.)

---

[3]  The amended complaint does not state whether or not Plaintiff filed a grievance following the denial of his second request for a Kosher diet.

## II.   LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   And a claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court "accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." See Taksir v. Vanguard Grp., 903 F.3d 95, 96-97 (3d Cir. 2018) (citation and internal quotations omitted).   The court also construes the factual allegations "in the light most favorable to the plaintiff[.]" See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (citation and internal quotations omitted).   The court, however, is not required to credit "conclusions of law" or to draw "unreasonable factual inferences." See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 133 (3d Cir. 2006).

Additionally, the United States Court of Appeals for the Third Circuit has outlined a three-step process to determine whether a complaint meets the pleading

standard established by Twombly and Iqbal.  See Connelly v. Lane Const. Corp.,
809 F.3d 780, 787 (3d Cir. 2016).  First, the court "must 'tak[e] note of the elements
[the] plaintiff must plead to state a claim.'"  See id. (quoting Iqbal, 556 U.S. at 675)
(alterations in original).  Second, the court "should identify allegations that, 'because
they are no more than conclusions, are not entitled to the assumption of truth.'"  See
id. (quoting Iqbal, 556 U.S. at 679).  And, third, "'[w]hen there are well-pleaded
factual allegations, [the] court should assume their veracity and then determine
whether they plausibly give rise to an entitlement to relief.'"  See id. (quoting Iqbal,
556 U.S. at 679).

## III.   DISCUSSION

### A.   Defendants' Motion to Partially Dismiss the Amended Complaint

In their motion to partially dismiss the amended complaint and supporting
brief, Defendants assert several arguments.  The Court addresses each of those
arguments separately below.

#### 1.   Plaintiff's Section 1983 Claims for Monetary Damages Against Defendants in Their Official Capacities

Plaintiff has asserted his First and Fourteenth Amendment claims pursuant to
the provisions of Section 1983.  (Doc. No. 24.)  That statute provides, in pertinent
part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or

9

> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  It "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right."  See id. (citation omitted).

Here, Defendants explain that Plaintiff has attempted to sue Defendants in both their individual and official capacities.  (Doc. No. 28 at 5-6 (citing Doc. No. 24 ¶ 9).)  Defendants argue, however, that Plaintiff's Section 1983 claims for monetary damages against Defendants in their official capacities must be dismissed, with prejudice, because they are barred by the Eleventh Amendment.  (Id.)  In his brief in opposition, Plaintiff has acknowledged that these claims "should be dismissed with prejudice."  (Doc. No. 29 at 3.)  The Court agrees with the parties.

A suit for monetary damages brought against a state official in his official capacity is not a suit against that official; it is a suit against that official's office.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citation omitted);

Allen v. New Jersey State Police, 974 F.3d 497, 506 (3d Cir. 2020).  This is no different from a suit against the State itself, which is barred by the Eleventh Amendment.  See Will, 491 U.S. at 66, 70-71; Pennhurst State School & Hops. V. Halderman, 465 U.S. 89, 98-99 (1984) (explaining that the Eleventh Amendment bars suits against a State in federal court).

There are, however, two (2) exceptions to Eleventh Amendment immunity— i.e., (1) the State has waived its immunity or (2) Congress has exercised its power under Section 5 of the Fourteenth Amendment to override that immunity.  See Will, 491 U.S. at 66; Kentucky v. Graham, 473 U.S. 159, 169 (1985) (recognizing these two exceptions to a State's Eleventh Amendment immunity).

The Court finds that neither one of these exceptions apply here.  As explained by the United States Court of Appeals for the Third Circuit, the Commonwealth of "Pennsylvania has not waived its sovereign immunity defense in federal court[,]" and "Congress did not abrogate Eleventh Amendment immunity via [Section] 1983[.]"  See Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020) (citation omitted); see also 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) (stating that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); Quern v. Jordan, 440 U.S.

332, 345 (1979) (concluding that the history and language of Section 1983 establish that Congress did not intend to make the States liable under that statute).

Accordingly, for all of these reasons, the Court concludes that Plaintiff's Section 1983 claims for monetary damages against Defendants in their official capacities are barred by Eleventh Amendment immunity. As such, the Court will grant Defendants' unopposed motion to dismiss Plaintiff's Section 1983 claims for monetary damages with prejudice against Defendants in their official capacities.

> **2.    Plaintiff's RLUIPA Claims for Monetary Damages Against Defendants in Their Individual and Official Capacities**

In addition to asserting violations of the First and Fourteenth Amendments under Section 1983, Plaintiff has also asserted violations of RLUIPA.  (Doc. No. 24.)  RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person" furthers "a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  See 42 U.S.C. § 2000cc-1(a).  "Several provisions of RLUIPA underscore its expansive protection for religious liberty."  Holt v. Hobbs, 574 U.S. 352, 358 (2015).  For instance, "religious exercise" is defined "capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'"  See id. (quoting 42 U.S.C. § 2000cc–5(7)(A)).  In addition, "Congress mandated that

this concept 'shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" See id. (quoting 42 U.S.C. § 2000cc–3(g)).  Congress also stated that "RLUIPA 'may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.'"  See id.  (quoting 42 U.S.C. § 2000cc– 3(c)).

Even though RLUIPA offers such expansive protection for religious liberty, a prisoner bears the initial burden of showing that his religious exercise is grounded in a sincerely held religious belief and that the defendant's action has substantially burdened his religious exercise.  See id. at 360-61.  Once, however, the prisoner makes this showing, the burden shifts to the defendant to show that the substantial burden on the prisoner's religious exercise furthers "'a compelling governmental interest'" and "'[is] the least restrictive means of furthering that compelling governmental interest.'"  See id. at 362 (quoting 42 U.S.C. § 2000cc–1(a)).

Here, Defendants argue that Plaintiff's RLUIPA claims for monetary damages against Defendants in both their individual and official capacities should be dismissed, with prejudice, because they are barred by RLUIPA and Eleventh Amendment immunity, respectively.  (Doc. No. 28 at 6-7.)  Plaintiff opposes Defendants' argument in his brief in opposition and contends that his claims for

monetary damages against Defendants in their "individual capacities" are actionable under RLUIPA.  (Doc. No. 29 at 3.)  The Court, however, agrees with Defendants.

RLUIPA does not permit an action against state officials in their individual capacities.  See Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012).  As explained by the United States Court of Appeals for the Third Circuit:

> RLUIPA was enacted pursuant to Congress's powers under the Spending Clause, thereby allowing Congress to impose certain conditions, such as civil liability, on the recipients of federal funds, such as state prison institutions. Because state officials are not direct recipients of the federal funds, and thus would have no notice of the conditions imposed on them, they cannot be held individually liable under RLUIPA.

See Mack v. Warden Loretto FCI, 839 F.3d 286, 303 (3d Cir. 2016) (footnotes omitted).

In addition, RLUIPA claims for damages against state officials in their official capacities are barred by the Eleventh Amendment.  See Sossamon v. Texas, 563 U.S. 277, 293 (2011).  As explained above, a suit for monetary damages that is brought against a state official in his official capacity is no different from a suit brought against the State itself, which is barred by Eleventh Amendment immunity unless the State has waived its immunity or Congress has exercised its power under Section 5 of the Fourteenth Amendment to override that immunity.  See Will, 491 U.S. at 66, 70-71 (citation omitted); Kentucky, 473 U.S. at 169.

These two (2) exceptions, however, do not apply here.  The Commonwealth of Pennsylvania has not waived its sovereign immunity defense in federal court, <u>see</u> <u>Scott v. Beard</u>, 252 F. App'x 491, 492-93 (3d Cir. 2007) (unpublished) (holding that a "RLUIPA claim for money damages against [defendant] in his official capacity" is, essentially, a claim against the State itself and, thus, "is barred by the Eleventh Amendment" (citations omitted)), and Congress did not abrogate Eleventh Amendment immunity via RLUIPA, <u>see</u> <u>Sossamon</u>, 563 U.S. at 285-88.

Thus, for all of these reasons, the Court concludes that Plaintiff's RLUIPA claims for monetary damages are not permitted against Defendants in either their individual or official capacities.  See <u>Marshall v. Pennsylvania Dep't of Corr.</u>, 690 F. App'x 91, 92 (3d Cir. 2017) (unpublished) (concluding that the prisoner-plaintiff's RLUIPA claims for monetary damages "fail[ed]" because "RLUIPA does not permit actions against State officials in their individual capacities" and because "a claim for damages against State officials in their official capacities is barred by sovereign immunity" (citation and internal citation omitted)).  As such, the Court will dismiss Plaintiff's RLUIPA claims for monetary damages against Defendants with prejudice.  Plaintiff will be permitted to proceed with his RLUIPA claims for declaratory and injunctive relief against Defendants in their official capacities.[4]

---

[4] Regarding Plaintiff's request for injunctive relief, the amended complaint specifically requests that an injunction be issued to "Defendant Klem or his agents[.]"  (Doc. No. 24 at 6.)

### 3.      Plaintiff's Fourteenth Amendment Due Process Claim

Defendants assert that Plaintiff's amended complaint purports to raise a Fourteenth Amendment due process claim based upon the alleged denial of his grievance and related appeals at SCI Houtzdale, concerning the denial of his request for a Kosher diet.  (Doc. No. 28 at 7.)  In support, Defendants cite to Plaintiff's allegation that "'[t]he denial of his grievance and appeals were done in an arbitrary and capricious manner . . . . '"  (Id. (quoting Doc. No. 24 ¶ 32).)  Based upon this allegation, Defendants aver that Plaintiff's amended complaint appears to be asserting a substantive due process claim.  (Id. at 7-8.)  Defendants argue, however, that Plaintiff's amended complaint has not plausibly stated such a claim.  (Id. at 8.)

Although Plaintiff has filed a brief in opposition to Defendants' motion to dismiss (Doc. No. 29), Plaintiff has not meaningfully disputed the substance of Defendants' argument regarding his Fourteenth Amendment due process claim. Instead, Plaintiff merely reiterates that the Due Process Clause of the Fourteenth Amendment protects inmates from "arbitrary and capricious procedures and decisions by government officials, including a fundamentally fair grievance process."  (Id. at 4.)    For the reasons discussed below, however, the Court is persuaded by Defendants' argument.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend.

XIV, § 1. "The core concept of due process is protection against arbitrary government action" and, as that core concept has developed over time, "it has come to have both substantive and procedural components." Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 658 (3d Cir. 2011) (citation and internal citation omitted). The procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property[,]" see id. at 662, and the substantive component "limits what government may do regardless of the fairness of procedures that it employs[.]" See Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) (citation omitted).

In order to state either a procedural or substantive due process claim, Plaintiff must establish, as a threshold matter, that he has was deprived of an individual interest that is encompassed by the Fourteenth Amendment's protection of life, liberty, and property. See McCurdy v. Dodd, 352 F.3d 820, 825-26 (3d Cir. 2003) (explaining that, in Section 1983 actions, courts must address the threshold issue of whether the alleged due process right implicates a constitutional right at all); Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (stating that, in order for a plaintiff to plausibly state a claim under Section 1983 for the "deprivation of procedural due process rights, the plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did

17

not provide due process of law" (citation and internal quotation marks omitted));

Skiles v. City of Reading, 449 F. App'x 153, 157 (3d Cir. 2011) (unpublished)

(stating that, in order for a plaintiff to plausibly state a claim under Section 1983 for

the deprivation of substantive due process rights, the plaintiff must allege that (1)

"he has a protected constitutional interest at issue" and (2) government employees

engaged in conduct that "shocks the conscience[,]" which is a standard that seeks to

protect an individual from "arbitrary action of government" (citation and internal

citations and internal quotation marks omitted)).

Here, in his amended complaint, Plaintiff appears to assert that he has a

"protected liberty interest" in his right to the grievance process at SCI Houtzdale.

(Doc. No. 24 ¶ 32 (stating that the grievance process at SCI Houtzdale "lacked the

capability to provide meaningful review" and that "[t]he denial of his grievance and

appeals were done in an arbitrary and capricious manner . . .").)  As appropriately

argued by Defendants, however, prisoners do not have a constitutional right to prison

grievance procedures. See Glenn v. DelBalso, 599 F. App'x 457, 459 (3d Cir. 2015)

(unpublished) (explaining that "[a]ccess to prison grievance procedures is not a

constitutionally-mandated right, and allegations of improprieties in the handling of

grievances do not state a cognizable claim under [Section] 1983" (citation omitted));

Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (unpublished) (affirming

the district court's conclusion that the "defendants' alleged obstruction of prison

grievance procedures does not give rise to an independent claim[,]" and explaining that "[p]risoners do not have a constitutional right to prison grievance procedures" (citation omitted)); <u>Fears v. Beard</u>, 532 F. App'x 78, 81 (3d Cir. 2013) (unpublished) (explaining that prisoners do not "have a liberty interest protected by the [D]ue [P]rocess [C]lause in the grievance procedures" (citation omitted)).

Thus, even if a grievance process is offered to Plaintiff by the DOC, and even if Plaintiff avails himself of that process, which Plaintiff alleges he has done here, the alleged improprieties concerning that process do not give rise to a constitutional claim under Section 1983.  Accordingly the Court is persuaded by Defendants' argument that Plaintiff's Fourteenth Amendment due process claim fails to state a claim upon which relief can granted.  The Court will, therefore, dismiss Plaintiff's Fourteenth Amendment due process claim with prejudice.[5]

---

[5] Although Plaintiff also alleges, in passing, that he has a protected liberty interest in practicing his religion, the Court does not treat this allegation as asserting a separate Fourteenth Amendment claim.  Even if, however, the Court treated this allegation as asserting such a claim, the Court would still find that it fails as a matter of law.  <u>See</u> <u>Contant v. Lowe</u>, 450 F. App'x 187, 190 (3d Cir. 2011) (unpublished) (affirming the district court's conclusion that the immigration detainee "d[id] not have a liberty interest in receiving a diet that complies with his religious beliefs" (citing <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972)); <u>Edwards v. Thomas</u>, No. 3:16-cv-00045, 2017 WL 510450, at *4 (M.D. Pa. Feb. 7, 2017) (concluding that defendants were entitled to dismissal of the prisoner's Fourteenth Amendment claim because "prisoners do not have a liberty interest in receiving a diet which complies with their religious beliefs" (citation omitted)).

19

####    4.       Personal Involvement of Defendants Pyo, Smith, and Moore

Defendants argue that Defendants Pyo, Smith, and Moore are entitled to dismissal of Plaintiff's Section 1983 claims based upon their lack of personal involvement in any asserted violations of Plaintiff's constitutional rights. (Doc. No. 28 at 10-11.)  In support, Defendants argue that Plaintiff's allegations against these Defendants are based only upon their review of Plaintiff's grievance and grievance appeals. (<u>Id.</u> at 10.)  Defendants argue, however, that in the prison context, such allegations are insufficient to show personal involvement. (<u>Id.</u>)  As such, Defendants argue that Plaintiff's Section 1983 claims against Defendants Pyo, Smith, and Moore should be dismissed from the amended complaint with prejudice. (<u>Id.</u> at 11.)

Plaintiff, on the other hand, contends that his allegations in the amended complaint are sufficient to show that Defendants Pyo, Smith, and Moore were personally involved in the asserted violations of his constitutional rights. (Doc. No. 29 at 4.)  In support, Plaintiff argues that, through the grievance process at SCI Houtzdale, the unlawful denial of his request for a Kosher diet was "brought directly" to their attention, and that they each had the "power to remedy the violation[,]" but "failed to act[.]" (<u>Id.</u>)

The Court, having reviewed the allegations in the amended complaint, finds that Plaintiff has sufficiently alleged the personal involvement of Defendants Pyo, Smith, and Moore for purposes of Section 1983.  In order to plausibly state a claim

under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that the plaintiff claims violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).

Generally speaking, the mere filing of a grievance is insufficient to impute the actual knowledge that is necessary to demonstrate a defendant's personal involvement in an asserted constitutional violation.  See Rode, 845 F.2d at 1207-08 (finding that the filing of a grievance with the Governor-defendant's office was insufficient to demonstrate that the Governor himself had personal knowledge of the alleged wrongdoing).  In addition, grievances that complain of events that have already occurred and that are in the past are not sufficient to show that defendants who respond to such grievances were personally involved in the asserted constitutional violations.  See Robles v. Casey, No. 10-cv-02663, 2011 WL 398203, at *2 (M.D. Pa. Feb. 3, 2011) (concluding that plaintiff had not shown personal

involvement where "plaintiff's grievance only reported violations that had occurred in the past").

Under certain circumstances, however, a grievance may be sufficient to place a defendant on notice of continued wrongdoing and, thus, may show actual knowledge of and acquiescence in the events that form the basis of a plaintiff's asserted constitutional claims. See, e.g., Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003), as amended (May 29, 2003) (finding that prisoner-plaintiffs had established the personal involvement of a defendant who had played an "active role" in the continued denial of plaintiffs having access to religious texts and basing this finding, in part, on the fact that the defendant had issued a written response denying a final-grievance-appeal letter from one of the plaintiffs, which requested access to such religious texts); Diaz v. Palakovich, 448 F. App'x 211, 215 (3d Cir. 2011) (unpublished) (vacating district court's grant of summary judgment where the district court had failed to consider grievances pertaining to a pattern of ongoing wrongful conduct, and explaining that a reasonable factfinder could find that (a) the defendants had knowledge of such wrongful conduct through the prisoner's grievances and (b) had acquiesced in such conduct by failing to address the ongoing pattern of wrongful conduct).

Thus, on one hand, the Court acknowledges that merely responding to an inmate's grievance that complains of events that have already occurred does not

constitute the knowledge and acquiescence that is necessary to show personal involvement under Section 1983. On the other hand, however, the Court also acknowledges that responding to a grievance that complains of events that are ongoing and denying requested relief may constitute the knowledge and acquiescence that is necessary to show personal involvement under Section 1983.

Here, Plaintiff's amended complaint alleges that Defendants Pyo, Smith, and Moore: (a) were informed through the grievance process at SCI Houtzdale that Plaintiff had requested a Kosher diet based upon his religious beliefs and that Plaintiff was being denied a Kosher diet; (b) responded to Plaintiff's grievance and grievance appeals; and (c) had the authority to order that Plaintiff's request for a Kosher diet be granted or direct that Plaintiff be reconsidered for such a Kosher diet, but failed to do so.

Thus, based upon these allegations, the Court finds that Plaintiff's amended complaint sufficiently alleges that Defendants Pyo, Smith, and Moore were personally involved in the asserted violations of Plaintiff's constitutional rights. Accordingly, the Court will deny Defendants' motion to dismiss to the extent that they seek dismissal of Plaintiff's Section 1983 claims against Defendants Pyo, Smith, and Moore for lack of personal involvement.

### 5.      Plaintiff's Claims for Compensatory Damages

Defendants argue that Plaintiff seeks, <u>inter alia</u>, compensatory damages in his amended complaint.[6]   (Doc. No. 28 at 11.)   Defendants argue, however, that Plaintiff's claims for compensatory damages are barred by the Prison Litigation Reform Act ("PLRA").[7]   (<u>Id.</u>)  Although Plaintiff has filed a brief in opposition to Defendants' motion to dismiss (Doc. No. 29), he does not appear to oppose this argument.  Regardless, the Court agrees with Defendants.

The PLRA specifically provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  <u>See</u> 42 U.S.C. § 1997e(e); <u>Allah v. Al-Hafeez</u>, 226 F.3d 247, 250 (3d Cir. 2000) (concluding that the prisoner-plaintiff's Section 1983 claim for compensatory damages, which was based upon an alleged infringement of his First Amendment right to free exercise of religion, did not allege any physical injury and was thus barred by the PLRA).

---

[6]  Plaintiff also seeks punitive and nominal damages in his amended complaint. (Doc. No. 24 at 6.)  The Court notes that Defendants do not seek dismissal of Plaintiff's claims for punitive or nominal damages.

[7]  <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

Here, based upon the allegations in the amended complaint, the only injury that the Court can perceive as forming the basis for the damages Plaintiff seeks would be mental and/or emotional injuries.  The amended complaint, however, has not asserted any allegations of mental or emotional injury, much less any allegations of physical injury.  As a result, Section 1997e(e) of the PLRA limits Plaintiff's recovery by precluding his request for compensatory damages.  The Court will, therefore, grant Defendants' motion to dismiss Plaintiff's claims for compensatory damages.

**B.    Plaintiff's Pending Motions**

Plaintiff has filed a second motion for a preliminary injunction (Doc. No. 26), as well as a motion for leave to file a "supplemental complaint" (Doc. No. 34). Plaintiff, however, has not filed a brief in support of either motion, nor sought an extension of time to do so.  Thus, pursuant to Local Rule 7.5 of the Court's Local Rules, his motions will be deemed withdrawn.  See M.D. Pa. L.R. 7.5 (providing as follows: "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion . . . [i]f a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn").

**C.     Leave to Amend**

The final issue is whether Plaintiff should be granted leave to amend his amended complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]"  See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court concludes that it would be futile to grant Plaintiff leave with respect to the following claims: Plaintiff's Section 1983 claims for monetary damages against Defendants in their official capacities;

Plaintiff's RLUIPA claims for monetary damages against Defendants in their individual and official capacities; Plaintiff's Fourteenth Amendment due process claim; and Plaintiff's claims for compensatory damages under Section 1983.

The Court cannot conclude, however, that granting Plaintiff leave to amend would otherwise be futile and, thus, the Court will grant Plaintiff leave to file a second amended complaint. In reaching this conclusion, the Court observes that Plaintiff appears to be requesting leave to amend his amended complaint based upon his recent motion to "supplement" the amended complaint. (Doc. No. 34-1 at 1 (containing Plaintiff's "Proposed Supplemental Complaint[,]" wherein Plaintiff seeks to add a new defendant, namely, Scott Klinefelter, and remove two (2) existing Defendants, namely, Defendants Smith and Pyo).) The Court further observes that Defendants have not filed anything in opposition to this request. Thus, for all of these reasons, Plaintiff will be granted leave to file an all-inclusive second amended complaint.

Plaintiff is advised that the second amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The second amended complaint shall set forth his claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion to partially dismiss the amended complaint will be granted in part and denied in part.  (Doc. No. 27.)  In addition, Plaintiff's pending motions will be deemed withdrawn.  (Doc. No. 26, 34.)  An appropriate Order follows.

Dated: February 28, 2023                    s/ Sylvia H. Rambo
                                            SYLVIA H. RAMBO
                                            United States District Judge

28